UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CV-00064-R

**LARRY MARTIN**                                                                                              **PLAINTIFF**

**v.**

**CITY OF GLASGOW, KENTUCKY, et al.,**                                                 **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on cross motions for summary judgment by Plaintiff and Defendants (DN 32; DN 33). The parties have fully briefed the motions (DN 35; DN 36; DN 37; DN 38; DN 39) and they now are ripe for review. For the reasons that follow, Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED IN PART. This matter is hereby DISMISSED.

## BACKGROUND

Plaintiff Larry Martin ("Martin") was employed as a police officer with the City of Glasgow, Kentucky ("the City") until the spring of 2011. A physical altercation between Martin and a prisoner in the Barren Country courthouse led to his termination from the Glasgow Police Department ("GPD"). Martin brings this lawsuit against the City and three of its principal officials: Rhonda Trautman ("Trautman"), the City's mayor, James Duff ("Duff"), a Lieutenant Colonel of the GPD, and Kent Keen ("Keen"), another Lieutenant Colonel of the GPD (collectively "Defendants"). Martin's chief grievance revolves around Defendants' failure to abide by the procedural due process protections that Kentucky law provides police officers before termination of employment.

The undisputed, material facts are as follows. Martin's work as a police officer for the

1

GPD began in September of 2006.[1]  On February 24, 2011, officers for the GPD were in the Barren County courthouse supervising criminal defendants and performing other security-related functions.  James Owens was scheduled to make an appearance that day before Judge Patton in a criminal matter.  Court personnel determined during his hearing that Owens was either intoxicated or under the influence of drugs, prompting the judge to order Martin and other officers nearby to arrest him.

A scuffle ensued when Owens began to hurl racial insults at the African American officers.  The officers handcuffed Owens and escorted him to an elevator to transport him to the ground floor.  Martin entered the elevator with Owens and two other officers.  Once inside, Owens began to struggle with the officers anew.  In response, Martin removed his police baton and stuck Owens on the arms, in the groin, and on the shoulders.  An officer accompanying the group had to order Martin to stop striking the prisoner.  Owens was eventually removed to a detention center without having suffered major injury.  He did not recall much about the incident given his state of inebriation, nor did he file a complaint with the GPD or municipal government.

Martin met with Duff regarding the episode on March 6, 2011.  There, Duff accused Martin of needlessly assaulting Owens.  He then suspended Martin with pay and ordered him to turn over his weapon and badge.  Duff Depo., DN 23 p. 8.  Martin returned to GPD headquarters the next day to meet with Duff and Keen, both of whom were interim co-police chiefs.  Duff and Keen informed Martin again that he would be suspended with pay while the GPD investigated

---

[1] In 2009, Martin participated in a federal investigation to uncover drug trafficking and witness tampering by members of the GPD.  He alleges that following this cooperation with federal authorities, city officials began to harass and mistreat him.  While he avers that his termination was motivated by his whistleblowing activities, these assertions are immaterial for the purposes of this motion.

2

the assault on Owens.  DN 33-8.  The co-chiefs did not present Martin with formal charges and gave no notice of a forthcoming administrative hearing.  Between March 7 and March 16, 2011, Duff, Keen, and Trautman met to discuss Martin's future employment and eventually decided to discharge him.  Trautman Depo., DN 20 p. 9-10; Duff Depo., DN 23-1 p. 2, 3.

On March 16, Martin returned to GPD headquarters to meet with Duff and Keen and discuss the results of the investigation.  The precise disciplinary charges against Martin were not given to him during the encounter.  Trautman Depo., DN 20 p. 11-12.  The only documentation provided by Duff and Keen was an "Employee Disciplinary Notice," which referenced portions of GPD's code of conduct that Martin had allegedly violated.  DN 33-10.  During the meeting, Duff and Keen asked Martin to resign his post with the GPD, insinuating that it would bode better for his future employment if he left voluntarily.  Keen Depo., DN 21 p. 8; Duff Depo., DN 35-1 p. 5.  Martin asked to speak with an attorney before deciding what to do, whereupon Duff warned him that if he left the conference room he would be terminated.  Duff Depo., DN 35-1 p. 5; Keen Depo., DN 21 p. 8.  Martin left the room shortly thereafter, resulting in his termination.  Keen Depo., DN 21 p. 9.  Duff and Keen executed the Employee Disciplinary Notice after the meeting, which stated that Martin's employment ended on March 16 at 1:15 p.m.  DN 33-10.

Later that day, an officer for the GPD arrived at Martin's residence to collect his city-issued equipment and identification.  Keen Depo., DN 21 p. 8.  Trautman signed the Employee Disciplinary Notice on March 21, 2011, formally authorizing Martin's termination.  DN 33-10.  In the days following, the City's human resources department issued Martin's final pay check and removed him from Kentucky's retirement system and the group health insurance plan.  DN 32-9; DN 32-10; DN 32-11; DN 32-12.

On April 1, 2011, a report appeared in the local media that a criminal complaint had been filed against Martin for impersonating a police officer. The GPD issued a press release four days later informing the public that Martin had been dismissed on March 16 for violations of departmental policy. DN 32-14. The press release recited the generalities of the criminal complaint and was disseminated to local media outlets.

The Kentucky General Assembly has enacted legislation to protect the employment rights of police officers and firemen. These statutes outline procedures that cities and municipalities must abide by when suspending and terminating police officers for cause. *See* KRS §§ 15.520, 95.450. Section 95.450 governs the employment rights of police officers in third-class cities like Glasgow. According to its provisions, no officer may be terminated for departmental infractions until after written charges are preferred and served on the officer and a hearing is conducted before the city's legislative body. KRS § 95.450 (1), (3). The hearing must be scheduled after the charges are levied against the officer, and at least two days before the hearing the officer must be informed of its time and place. *Id*. § 95.450 (3). The officer may compel witnesses to appear and testify on his behalf. *Id*. § 95.450 (4). Dismissal of the officer may only follow once the legislative body finds the officer guilty of the conduct. *Id*. § 95.450 (5).

Defendants acknowledge that the meeting held on March 16 did not satisfy the procedural requirements of KRS § 95.450. On April 14, Defendants realized their mistake and attempted to undo the error. Trautman penned and sent a letter that day rescinding Martin's termination but placing him on suspension without pay. DN 33-12. The letter made the suspension retroactive, effective from March 16 at 1:15 p.m. DN 33-12. It also informed Martin that a hearing would be scheduled before the City's legislative body pursuant to KRS § 95.450.

4

DN 33-12. The letter was personally delivered that day to Martin's residence by a member of the GPD. DN 33-13. Unpersuaded by Trautman's act of contrition, Martin filed this lawsuit the next day. Complaint, DN 1.

Martin's hearing was scheduled before the City Council for May 3, 2011. DN 33-14. On April 18, 2011, the City faxed a copy of the notice of the hearing to Martin's attorney, who in turn emailed it to Martin. On April 29, 2011, Trautman sent another letter to Martin with the administrative charges, the notice of the hearing, and all documents that would be considered by the City Council during the hearing. This package of materials was sent via regular mail, certified mail, and delivered by courier to his residence. It is unclear if Martin received it.

Martin did not attend the hearing and sent no written response. At the hearing, the City Council heard testimony from four witnesses to the event. Afterwards, it unanimously found Martin guilty on the disciplinary charges and terminated his employment.

### STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the

case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The complaint alleges three constitutional claims against Defendants pursuant to 42 U.S.C. § 1983: (1) a violation of Martin's procedural due process rights as provided for under KRS § 95.450; (2) another procedural due process violation as provided for under KRS § 15.520; and (3) a violation of Martin's due process rights for publically disparaging his good name. He pursues six state-law theories as well. For relief, Martin asks for compensatory and punitive damages, reinstatement with full back pay and benefits, attorneys fees, and an injunction to prevent this matter from being referenced in his employment file. Complaint, DN 1 p. 13-14.

Presently, the parties move for summary judgment on the federal-law causes of action. The Court confronts these theories before advancing to the state-law claims.

### A. Count One: Violation of Fourteenth Amendment Due Process Rights - KRS § 95.450

Martin asserts Defendants violated his Fourteenth Amendment procedural due process rights when they disobeyed the disciplinary procedures outlined in KRS § 95.450. The

Fourteenth Amendment protects citizens from state deprivation of life, liberty, or property without due process of law.  U.S. Const. amend XIV.  Protected property interests do not emanate from the Constitution, but rather are "created and defined by existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  When a litigant asserts a governmental official has violated his procedural due process rights, a court employs a two-step analysis to measure the claim: determine if the litigant possessed a legitimate property interest and then ask what procedures were necessary to protect the interest.  *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citing *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990)).

     Kentucky law controls the nature of the employment relationship between Martin and the GPD.  *See Bishop v. Wood*, 426 U.S. 341, 344 (1976).  Individuals typically do not have a property interest in an employment position unless they are able to "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment."  *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997).  For police officers and firemen in Kentucky, KRS § 95.450 curtails their suspension and termination to instances of "inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the legislative body."  KRS § 95.450 (1).  The language acts as an assurance that police officers will not be disciplined without "just cause."  *See Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (where a Pennsylvania statute prevented suspension or termination of police officers absent specific conduct, "just cause" was required for discipline).  Thus, Martin enjoys a constitutionally protected interest in his continued employment.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (public school employees had a protected property

interest in continued employment when they could not be terminated without just cause).

With a recognized property interest, the question becomes whether the process during Martin's termination satisfies the Constitution. The parties make two important concessions in this regard. First, neither party contests that Martin was due some process either before or after his termination. Second, Duff and Keen readily admit that they contravened the procedure espoused in KRS § 95.450 during the meeting on March 16. Under that statute, a termination of an officer may only occur if he receives a written copy of the charges against him, a hearing is held before the city's legislative body, and that body finds the officer guilty. Because the impromptu meeting on March 16 bypassed this codified procedure, Duff and Keen did not follow the statute.

A plaintiff may state a cognizable procedural due process claim under § 1983 one of two ways: "by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (emphasis in original). The present controversy belongs in the second group. This is not a case where a litigant is challenging the sufficiency of the process provided for by a state procedure. Indeed, at no point does Martin allege that he was due *more* process than that provided for in KRS § 95.450. Rather, Martin maintains that Duff and Keen engaged in a "random and unauthorized act" when they disregarded the applicable statute.

Procedural due process claims that fall into the random-and-unauthorized-act category are subject to dismissal under the *Parratt* doctrine. In *Parratt v. Taylor*, 451 U.S. 527 (1981), an

inmate brought suit against a prison when items received through the mail were negligently destroyed by prison officials. The Supreme Court held that the prisoner's procedural due process allegation was not actionable because the loss "did not occur as a result of some established state procedure." *Id*. at 543. Instead, the property loss arose during the informal practice of checking prisoner mail, which meant the state could not have predicted the property loss. *Id*. at 541. Under these circumstances, state tort law was the only avenue available to the prisoner because pre-deprivation process would have been infeasible. Put another way, the *Parratt* doctrine governs procedural due process claims "in which post deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). Where however the state does not offer a post-deprivation procedure to remedy the governmental action, *Parratt* is inapplicable. *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349-50 (6th Cir. 1992) (citations omitted).

     For dismissal under *Parratt*, Martin must have been deprived of a property right pursuant to a "random and unauthorized act" and an adequate state remedy was available to him. *See Macene,* 951 F.2d at 706. If both prongs are answered in the affirmative, his procedural due process claim is defective. *Learnard v. Inhabitants of Town of Van Buren*, 182 F. Supp. 2d 115, 123 (D. Me. 2002). Though the misapplication of state law by government officials represents a "random and unauthorized act," *see Hadfield v. McDonough*, 407 F.3d 11, 20 (1st Cir. 2005), no state procedure existed for Martin to pursue remedial action. Police officers contesting their termination may appeal the decision to the county's circuit court, but only where the termination decision was pronounced by the city's legislative body. KRS § 95.460(1). The dilemma for

9

Martin is the circuit court's jurisdiction is not implicated because Duff and Keen do not constitute a legislative body under the statute. As there was no appellate path open for Martin to follow, *Parratt* does not bar his suit. *See Sutton*, 958 F.2d at 1349-50 (where defendants failed to abide by Ohio statutes and prevented plaintiffs from pursuing state remedies, summary judgment was improper).

With *Parratt*'s impact negated, the Court reaches the heart of Martin's claim: whether he was provided sufficient process under the Constitution. The Court's analysis must begin with the March 16 meeting.

Certain facts about this meeting are not up for debate. Foremost, Duff, Keen, and Trautman believed that they had terminated Martin. Trautman's endorsement of the Employee Disciplinary Notice, the confiscation of his gear, the issuance of his final pay check, and the notification to the public in the press release illustrates that all those involved with the March 16 meeting believed Martin was terminated. Next, this pre-termination hearing violated the procedures prescribed by KRS § 95.450. As Defendants neglected the mechanism to terminate police officers outlined in the statute, they breached Kentucky law during the discharge.[2]

Nevertheless, even if Defendants discarded the pertinent statutory protections, the Court is duty bound to examine the available process through the lens of the Constitution. Martin argues that a per se constitutional violation occurs if a governmental official ignores a state statute that dictates the amount of process necessary for a property right. This is a misstatement

---

[2] Defendants state that Martin was not actually terminated because Duff and Keen did not have such power under KRS § 95.450. For the purpose of this motion, the Court presumes Martin was terminated on March 16 but, given the tenor of its decision, does not rule affirmatively on the issue.

10

of the law.

State statutes play an advisory role in determining the amount of process due a citizen with a recognized property interest. "[T]he amount of process that [a plaintiff] must be accorded is judged by federal law rather than state law." *Peterson v. North Dakota ex rel. North Dakota Univ. Sys.*, 240 F. Supp. 2d 1055, 1063 (D.N.D. 2003). Therefore, even where a state statute diagrams a procedure for depriving a citizen of a property right, a deviation from that procedure may not necessarily be viewed as a constitutional violation. *Bills v. Henderson*, 631 F.2d 1287, 1299 (6th Cir. 1980); *accord Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("[V]iolations of state rules are not necessarily violations of the Due Process Clause even where those rules regulate the deprivation of a property or liberty interest whose existence is established."). The Eastern District of Kentucky cited to this principle when it examined these exact statutes, stating that as the disciplinary procedures for Kentucky police officers "go above and beyond the minimum required by due process[,] . . . constitutional due process claims cannot be sustained on the argument that [d]efendants did not follow each and every requirement of [KRS §§ 95.450 and 15.520]." *Bocook v. City of Ashland*, No. 05-CV-00242-HRW, 2006 WL 2264965, at *5 (E.D. Ky. Aug. 8, 2006). Consequently, Defendants' missteps in the application of KRS § 95.450 do not automatically equal a constitutional infraction.

"'[T]he root requirement of the Due Process clause' is 'that an individual be given the opportunity for a hearing before he is deprived of any significant property interest.'" *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (quoting *Loudermill*, 470 U.S. at 542). In the employment context, pre-termination hearings need not be extensive but must offer employees notice of the charges against them and an opportunity to respond. *Id*. They serve mainly as a

11

way to conduct an "initial check against mistaken decisions." *Id*. Overall, the "a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage." *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992).

Post-termination hearings demand more substance, as they "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988). Just how thorough these proceedings must be depends on the interplay between the pre- and post-termination process. *Mitchell*, 375 F.3d at 480. Where a state offers minimal pre-termination process, an employee with a property interest in continued employment is due a more elaborate post-termination hearing. *Id*. (quoting *Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270 (6th Cir. 1985)). An employer is not required to conduct both pre- and post-termination hearings, but cursory pre-termination proceedings may necessitate a post-termination hearing. *Carter*, 767 F.2d at 273.

Setting the procedure of KRS § 95.450 aside, Martin was entitled to a pre-termination hearing with notice of the charges and an opportunity to respond. *Id*. He received a meeting with his supervisors where the men discussed his disciplinary troubles. Still, few of the procedural safeguards commonly associated with due process hearings were present: Martin was not given advance notice of the charges; the charges against him were general and unwritten; Martin was not presented with the evidence against him or permitted to confront his accusers; and Martin was unaccompanied by legal counsel. These procedures were not "meaningful" and therefore necessitated a more extensive post-termination hearing.

Though Defendants did not conduct such a proceeding immediately, Martin had a full

termination hearing on May 3 as provided for under KRS § 95.450.  Between April 14 and May 3, Defendants retroactively reinstated Martin and commuted his discharge to suspension without pay, scheduled a termination hearing before the City Council, attempted to serve him with copies of the charges, and made a concerted effort to inform him of the hearing's date and location. Martin does not dispute that had he been in attendance, he would have been permitted to have his attorney present, confront the witnesses who testified, and call witnesses to speak on his behalf. While he alludes to possible problems with notice for the May 3 hearing, the Court finds that Defendants' repeated attempts to provide Martin with the necessary information constitute constructive service.  *See Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005) (Constitution only requires notice that is "reasonably calculated" to apprise party of action).  In all, Martin raises no legitimate objections to the method by which Defendants carried out the May 3 hearing and its sufficiency under the Fourteenth Amendment.  *Cf. Mitchell*, 375 F.3d at 480-81 (post-termination proceedings require, at a minimum "'that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him.'" (quoting *Carter*, 767 F.2d at 273)).

This ruling begets the dispositive inquiry: whether the proper hearing on May 3 nullifies the Defendants' initial errors on March 16.  The Court believes that it does.  The "central meaning" of procedural due process is to grant individuals whose property interests are affected by government action the right to be heard.  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  Any procedural misstep that stymies this right may be cured by conducting a new hearing in compliance with due process requirements.  *See Batanic v. I.N.S.*, 12 F.3d 662, 667 (7th Cir.

1993); *accord McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[T]he state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."). Martin was eventually given proper notice, the opportunity to be heard, and the ability to submit proof to the City Council. His due process rights were not infringed since he received the post-termination protection to which he was constitutionally entitled. *See Mitchell*, 375 F.3d at 480-81.

Martin may propose that the temporal gap between his discharge on March 16 and the post-termination hearing on May 3 resulted in a legal injury. "At some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 470 U.S. at 547. Nevertheless, only an unreasonable delay between the deprivation of the property right and the post-deprivation hearing represents a recoverable harm. *See Wagner v. U.S. Dept. of Housing & Urban Dev.*, 835 F. Supp. 953, 958 (E.D. Ky. 1993). Week- or month-long periods before a post-deprivation hearing are not violative of the Fourteenth Amendment. *Loudermill,* 470 U.S. at 547 (nine-month delay constitutional); *Ritter v. Cohen*, 797 F.2d 119, 124 (3d Cir. 1986) (allegation of a twelve-month delay did not violate procedural due process); *Carter*, 767 F.2d at 273 (several week delay constitutional); *see also United States v. One 1951 Douglas DC-6 Aircraft*, 667 F.2d 502, 503 (6th Cir. 1981) (fifteen-month delay between seizure of aircraft and forfeiture action did not implicate procedural due process). Accordingly, the seven-week delay between the pre- and post-termination hearings was permissible.

The delay between March 16 and May 3 was also within the time frame condoned by the statute. Though KRS § 95.450 does not set forth a specific period in which a hearing must be

held, its provisions must be viewed in conjunction with those provided for in KRS § 15.520. *Daly v. City of Hopkinsville*, No. 2004-CA-002375-MR, 2006 WL 657174, at *2 (Ky. Ct. App. Mar. 17, 2006). Police officers subject to disciplinary actions are entitled to a hearing before the municipality's legislative body within 60 days of the initial discipline. KRS § 15.520(1)(h)(8). Therefore, Martin's full hearing on May 3 occurred within the appropriate period.

Further, Martin was not damaged by delaying the post-deprivation hearing until May 3. The injuries he references include the denial of back pay and the economic harm resulting from his decision to cash out his retirement account.[3] Given the City's authority to suspend him without pay from the outset of his disciplinary issues, Martin has overstated the harm that he suffered. *See* KRS § 95.450(5). The City's absolute right to suspend Martin without compensation and its decision within three weeks to alter his status before he filed suit vitiate his claim for back pay. In addition, he was not injured by the withdrawal of funds from his retirement account as officers suspended without pay do not accrue supplementary deposits until reinstated. England Depo., DN 22 p. 7; England Aff., DN 36-6 ¶ 2. Nor would the delay between the pre- and post-termination hearings warrant a finding that Martin suffered compensable damage. Actual injuries are required for litigants that declare the delay of a due process hearing violated the Fourteenth Amendment. *See Ramer v. Long*, 431 F. App'x 73, 76 (3d Cir. 2011); *Berman v. Young*, 291 F.3d 976, 985 (7th Cir. 2002).

In sum, governmental officials overseeing a due-process hearing that departs from a state-mandated procedure may be inoculated from a procedural due process violation where a

---

[3] While Martin alludes to the cancellation of his insurance benefits during the briefing, this cannot constitute an injury because he admits he was not enrolled under the City's plan. Martin Aff., DN 32-3 ¶ 5.

15

subsequent hearing is held to remedy the improper deprivation. *See Marchionni v. Southeastern Pennsylvania Transp. Auth.*, No. CIV. A. 98–6491, 2000 WL 730348, at *2 (E.D. Pa. June 7, 2000) (citation omitted).  Defendants realized their oversight before Martin filed suit and reinstated him to the GPD pending a post-termination hearing.  They then took the appropriate action to apprise him of the charges pending against him, hold a post-termination hearing, and end his employment.  Although Defendants' actions did not precisely track the framework of KRS § 95.450, the process they provided Martin did not frustrate his constitutional rights.

### B. Count Two: Violation of Fourteenth Amendment Due Process Rights - KRS § 15.520

KRS § 15.520 is colloquially referred to as the "Police Officer's Bill of Rights."  *City of Munfordville v. Sheldon*, 977 S.W.2d 497, 497 (Ky. 1998).  It was enacted by Kentucky's legislature to "'establish a minimum system of professional conduct of the police officers of local units of government of this Commonwealth' by creating standards of conduct 'to deal fairly and set administrative due process rights for police officers . . . and at the same time providing a means of redress by the citizens of the Commonwealth for wrongs allegedly done to them by police officers[.]'"  *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky. Ct. App. 1982) (quoting KRS § 15.520).  The statute assures that officers who are the subject of a civilian complaint will not be disciplined or terminated without an investigation or an in-person hearing.  *Laux v. City of Oak Grove*, No. 5:03-CV-00141-R, 2004 U.S. Dist. LEXIS 27768, at *5 (W.D. Ky. Dec. 1, 2004).  Kentucky's appellate courts have strictly limited its protections to instances involving complaints by civilians.  *See Beavers v. City of Berea*, No. 2010-CA-001522, 2012 WL 28690, at *2-3 (Ky. Ct. App. Jan. 6, 2012); *Pearce v. University of Louisville ex rel. its Bd. of Trustees*, No. 2009–CA–001813, 2011 WL 5599540, at *5 (Ky. Ct. App. Nov. 18, 2011).

Defendants contend that KRS § 15.520 is inapplicable to the current matter, as Owens declined to lodge a complaint with the GPD about Martin's behavior. Martin counters that the statute's application is broader, covering all investigations of officers irrespective of their origins. The Court need not reach this inquiry. Based on the above-stated rationale for KRS § 95.450, the Court finds that Martin was provided adequate notice of the charges against him and presented with the opportunity to tell his side of the story. These procedures satisfied the Fourteenth Amendment even if Martin was due additional process under KRS § 15.520. After reviewing the specifics of the March 16 meeting and the hearing held on May 3, the Court concludes no procedural due process violation occurred.

### C. Count Three: Violation of Due Process Rights - Liberty Interest

Martin asserts that Defendants violated his due process rights by impugning his good name and damaging his honor and integrity. He says that this occurred when Keen "intentionally released to the media that [Martin] violated department rules and the suspension and termination notices alleging that he abused a prisoner and violated department policy." Complaint, DN 1 ¶ 45. Martin complains that he was not provided the opportunity to rebut these accusations. Complaint, DN 1 ¶ 46.

In certain cases, a person's good name or reputation may implicate a liberty interest protected by the due process clause of the Fourteenth Amendment. In *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404 (6th Cir. 1997), the Sixth Circuit considered the claim of a basketball coach at a public university who alleged a deprivation of his due process rights in connection with disciplinary proceedings. *Id.* at 407. The Court noted that while a reputational injury in certain circumstances may give rise to a liberty interest claim, the

17

information disseminated must go beyond an allegation of poor job performance, holding that:

> A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. Rather to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge that might seriously damage his standing and associations in the community or that might impose on him a stigma or other disability that would foreclose his freedom to take advantage of other employment opportunities. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.

*Id.* at 410 (internal quotations and citations omitted). "As a matter of law, an employee's liberty interest is not deprived if the employer merely states that the employee was terminated because of 'improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" *Isaac v. Conrad*, 39 F. Supp. 2d 1025, 1029 (S.D. Ohio 1999) (quoting *Ludwig*, 123 F.3d at 410).

The court of appeals in *Gregory v. Hunt*, 24 F.3d 781 (6th Cir. 1994) dismissed a public employee's liberty-interest claim when his employer released a statement that he was terminated for "inadequate work performance . . . fail[ure] to follow clear instructions . . . [and] for violating departmental policies and procedures." *Id.* at 783, 788. The court reasoned that the statements "did not deprive him of his interest in his 'good name, honor, and integrity.'" *Id.* at 788.

The present matter is indistinguishable. The press release and GPD's termination notice were not so severe as to implicate Martin's liberty interests. In describing his performance, they informed members of the public that Martin had been dismissed for violations of departmental policy. No mention was made of the alleged assault on Owens, his past disciplinary troubles, or his involvement with the federal investigation. The explanation for his dismissal in no way bears upon Martin's immorality or dishonesty. This claim is ripe for dismissal.

### D. State-Law Counts

Defendants have been granted summary judgment as to all federal claims asserted in this

matter. The only remaining theories of recovery are premised on Kentucky law. The Court finds that it does not have pendent jurisdiction under 28 U.S.C. § 1367 to address the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287–88 (6th Cir. 1992) (holding that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996). The Court declines to exercise jurisdiction as to the remaining state-law claims and they are dismissed without prejudice.

## CONCLUSION

Defendants are not escaping from liability because they performed their duties in a satisfactory manner. The uncontroverted facts show that the two most senior officers at the GPD, through their own incompetence, overlooked the ubiquitous procedural safeguards the Kentucky General Assembly established for law enforcement officers decades ago. Still, the "simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Alvarado Aguilera v. Negron*, 509 F.3d 50, 54 (1st Cir. 2007). Throughout the course of his suspension and ultimate termination, Martin was provided with the opportunity to learn of the charges against him, confront his accusers, and submit proof on his own behalf. These procedures were congruous with the Due Process Clause because they offered Martin a meaningful opportunity to contest his discharge, even if he declined to take advantage of them. Accordingly, his constitutional rights were not violated.

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN

PART.  All federal claims are hereby DISMISSED with prejudice.  The state law claims are dismissed without prejudice.  An appropriate order shall issue.